# THE BRITISH SHIP LOCH GARVE.

## January 18, 1909.

*Admiralty—Salvage compensation:* Different classes of salvage ser-vice entitled to compensation, considered.

*Same—Salvage—Compensation—Efforts of volunteer that accomplish nothing:* Where a volunteer attempts salvage of a stranded vessel and fails to accomplish anything and abandons the vessel which is later salved by others, he earns no compensation. Where such volunteer, on leaving the stranded vessel forwarded a message for assistance at the first oppor-tunity, which message did not arrive at its destination until after a later similar message forwarded by another boat of the same owner, if at all, the owner *held* to be not entitled to compensation on account of first mes-sage.

*In Admiralty*:   Libel *in rem* for salvage.

*Smith & Lewis,* Proctors for Libelant Inter-Island Steam Navigation Company, Limited.

*Holmes, Stanley & Olson,* Proctors for Libelant J. D. Spreckels & Bros. Company.

*Kinney, McClanahan & Derby,* Proctors for Claimant.

DOLE, J.   On the 4th day of March, 1907, after daylight, the British ship Loch Garve, libellee, carrying a cargo of salt-peter destined for the port of Honolulu, sailed ashore on the southerly side of Molokai where she lay until the evening of March 7th, when she was floated, the steam schooner Likelike and the steam tug Intrepid pulling on her at the time by at-tached hawsers. The Inter-Island Steam Navigation Company, Limited,—which for brevity will be referred to as the Inter-Island, during the period the libellee was aground attempted to float her by means of as many as five vessels of its coasting fleet, some of them coming and going and returning; the In-trepid, owned by J. D. Spreckels & Bros. Company,—herein-after referred to as Spreckels, also having assisted during part

of this time and the United States Revenue Cutter Manning also having assisted on the last day.

The Inter-Island and Spreckels filed their libels *in rem* for compensation and stipulated that their cases should be tried together. The Inter-Island contended that its five vessels which came to the assistance of the libellee all took part in the salvage operations, and that to them mainly was due the expeditious and successful removal of the Loch Garve from the reef to the port of Honolulu in safety without injury to the ship or cargo; that the operations were attended with great peril to the said salving vessels and with danger and hardship to the crews thereof, involving great skill and experience; that such operations were participated in by the United States ship Manning and the said tug Intrepid to a slight degree. Spreckels, the owner of the Intrepid, claims its assistance to have been most important; that its vessel promptly proceeded from Honolulu to the scene of the stranding and stood by until requested to assist by the master of the libellee, and thereupon, with difficulty and danger, made fast and put on a strain, keeping it up until the libellee was floated; that a large part of the merit of the rescue was due to her. The master of the Loch Garve, appearing as bailee of the ship, cargo and freight money, opposed these contentions and alleged that the libellee was ashore in smooth water on a sheltered coast in no special danger to the ship or cargo, and that her salvage was due mainly to the United States ship Manning.

I find the following facts to be satisfactorily proved: The locality of the grounding of the libellee was near the harbor of Kamalo, which is situated on the south side of the Island of Molokai, in a position which is protected during the prevalence of the northeast trades; that at the time the libellee was aground the weather was variable, the wind being northeasterly at the beginning and on the night of the 6th of March, when four vessels were attempting to float her at high tide, it was blowing with rain squalls from the northwest and west and at times during such period it was blowing from a southerly direction.

The shore at that place, during the prevalence of wind from the southwest, south or southeast, would be a lea shore and fully exposed to wind and sea from those directions. The sea bottom in that locality is soft coral with occasional patches of sand, which is a common condition around the shores of the Hawaiian Islands; and the libellee was imbedded in this material from her stem 128 feet aft to a depth varying from a foot and nine inches abaft amidships to seven feet six inches off her fore hatch and diminishing toward the stem to four feet six inches; with the bows lifted two feet and seven inches from its position when floating. On the evening of the next day,—March 5th, the steam schooner Mauna Loa, belonging to the libelant Inter-Island, on her regular trip from Honolulu to the windward islands, sighted the libellee, came off from her course, anchored near and made fast to her with considerable difficulty on account of the wind and current, using a wire hawser from the libellee, then steamed ahead and heaved on her anchors; the anchors coming home and the wind and current driving the steamer toward the reef, the hawser was cut and she went away on her course, having pulled about an hour by means of her steam winch and about sixteen minutes with her propeller, eleven of which were at full speed. From there she went to Lahaina and sent a wireless message to Honolulu reporting the stranding and asking for assistance. The steam schooner Kinau, owned by the Inter-Island, arrived at the locality of the wreck shortly after the Mauna Loa and anchored and attempted to connect with the libellee but after a great deal of trouble with her anchors dragging and being in danger of going ashore on the reef with a line under her stern likely to foul her propeller, she gave up the attempt and went on her course. The next morning,—the 6th, before daylight, the steam schooner Iwalani, owned by the Inter-Island, arrived, stood by until daylight and then, with much difficulty and hardship to her boat's crew, made fast to a line from the libellee and pulled steadily until early in the morning of the 7th before daylight, when she let go and went on her course and returned to afford further as-

sistance, but arrived after the libellee had floated. The steam schooner Likelike, owned by the Inter-Island, arrived from Honolulu in response to the request for assistance forwarded by the Mauna Loa from Lahaina, during the afternoon of the 6th and taking a hawser from the libellee, commenced to pull from a position near the Iwalani and kept up a strain until the libellee came off. The steam tug Intrepid followed the Likelike from Honolulu and not being able to make arrangements with the master of the libellee, stood by until about midnight and then being requested to assist, took the position next to the Likelike, and making fast to the libellee put a strain on her hawser, which she kept up until the libellee came off. In the meantime the steam schooner Claudine, owned by the Inter-Island, had arrived after dark in the evening of the 6th and made fast to the libellee and pulled with the three vessels through the high tide of that night and early in the morning at about two o'clock of the 7th she let go and went off on her route and returned, intending to further assist, but arriving after the libellee was floated. Captain Haglund, a representative of the libelant Inter-Island, arrived at the scene of the operations on the Likelike and took charge of the operations of the steamers of the Inter-Island and finally, at the request or assent of the master of the Loch Garve, took general charge of the salvage operations, not however, controlling the actions of the United States ship Manning. Captain Haglund suggested the removal of part of the cargo of the libellee, first that it be jettisoned, later, because of the objections of the master, he arranged on the 7th to remove part of the cargo to the Likelike, transferring it by the Likelike's small boats and her crew, working at this in the early afternoon of the 7th long enough to remove between twenty and twenty-five tons, by which the water line of the libellee after she floated off was one foot and seven inches lower than it was before she stranded.

I find that on the night of the 6th and the early morning of the 7th, up to 2 a. m., the Iwalani, Likelike and Claudine were pulling hard on the libellee during the period of high tide of

that night, and at midnight, when the high tide must have been on the wane, were joined by the Intrepid, but with her assistance were unable to produce any apparent effect. These four vessels held positions close to each other, with the wind variable and blowing from the northwest around to the south, which was in the opposite direction from the wind at the time the libellee stranded. The night was dark, rainy and squally, and they were in danger of colliding with each other, at times some of them swinging within twenty feet or less of each other. The position was a dangerous one as serious results would have followed if they had collided and if any hawser had parted or anchors dragged they would have been likely to have become mixed up in general confusion with great damage and with the danger of some of them going ashore. It is much to the credit of these four vessels that under the circumstances they continued pulling together as they did. It was no discredit to the Iwalani and Claudine that they departed from the scene of operations when the tide began to fall, as it was not to be expected that they could do with the falling tide what they could not do with the high tide and they left with the expectation of coming back and assisting again at the next high tide, which would be late in the evening of the 7th.

Much testimony was adduced in regard to the work of the Likelike and the Intrepid through the remaining period before the libellee floated. It is in evidence that they slackened the speed of their engines as it was most unlikely that they could pull her off when the four vessels at high tide could not do so. I consider, however, that after the work of the crew of the Likelike in removing cargo from the libellee, these two vessels would have done well, from the fact that the libellee was somewhat lightened, to have put their engines again at full speed during the late afternoon of the 7th.

The Manning arrived on the scene of the operations during the 7th and made fast to the libellee and began to pull a little after noon. She was unable to obtain a very good position and anchored off the port quarter of the libellee and pulled from a

hawser fixed to the libellee considerably forward of her stern, pulling at an angle approaching a right angle. At a little after five o'clock her line parted and the libellee, relieved of the strain, rolled a little to starboard. Those on board the Likelike and Intrepid noticing that her masts were swinging, put on full speed and at about half past five she came off. The claimant contends that this was due wholly to the strain put on by the Manning, which is a powerful boat: his contention being that the strain from the Manning pulling her over to port loosened her in the bed she was in in the sand and coral, whereby she was ready to come off as soon as the cable parted. It may be that this was to some extent the case. It is not easy to estimate the value of her services. It is true that she is a powerful boat, but it is also true that she only used 350 horse power on that occasion. The tendency of her strain would be to pull the Loch Garve to port against the coral on that side of the bed she was lying in and to hold her firmly against it. If she had alternated her strain by pulling at speed and then ceasing to pull for a while so as to rock the vessel it would seem as if such a method would have been more effective than the steady strain that was made. This proposition is favored by the fact that after she had been pulling for some time, at the parting of her hawser the vessel righted to an appreciable extent and soon thereafter yielded to the strain of the Likelike and Intrepid and floated into deep water.

I cannot help attributing the success of the operations on the 7th largely to the removal of the cargo from the libellee by the Likelike's crew, which lightened her somewhat,—a foot and seven inches as already shown. This, with the side pull of the Manning which evidently enlarged the bed in which the libellee was lying, and the fortunate parting of the Manning's hawser at the right moment, together with the following pull at full speed by the Likelike and Intrepid, were the immediate agencies that floated her.

In estimating the comparative value of the assistance of the several salvors, the work of the different vessels of the Inter-

Island must be considered. Any claim for compensation on account of the steamship Kinau must be left out of the case. Although she made an attempt to make fast to the libellee, she gave up the effort and went away without benefiting her or doing anything that might have benefited her except forwarding a wireless message to Honolulu from Lahaina, and this reached Honolulu, if at all, after a similar message forwarded by the Mauna Loa had been received. The citation by counsel for the Inter-Island of *The Flottbek,* 118 Fed. Rep. 954, 959, in support of its claim for compensation on account of· said Kinau, is not applicable under the circumstances of her operations.

" There is no pretense that the Matteawan at any time ever abandoned its efforts to relieve the Flottbek, and it must be kept in mind that her services in going to the Flottbek and in leaving that ship to signal for aid were performed at the special request of the Flottbek." *The Flottbek,* supra.

The Matteawan's signals brought assistance. One of the tugs which came to the aid of the Flottbek was not able to accomplish anything by reason of her machinery becoming disabled in heavy seas, but compensation was considered as due on her account, her assistance having been requested by the Flottbek, and she having made a brave attempt to give it, and having suffered injury in so doing. The Kinau was a volunteer, accomplished nothing and abandoned her attempt. Compensation is not awarded, in the absence of an engagement, for mere good intentions. Neither does *The Strathnevis,* 76 Fed. Rep. 855, 862, also cited by counsel for the Inter-Island on this point, apply; the salving vessel in that case having "contributed towards the success of a salvage service finally completed by others."

The Inter-Island is entitled to some compensation on account of the services of the Mauna Loa as found above; but her service in pulling on the libellee must be discounted on account of her abandonment of the attempt before any other vessel had made fast to save whatever good results she may have accom-

plished.   Her action in forwarding information of the stranding from Lahaina, which brought additional assistance, was a service of great importance as results show.

The work of the Iwalani was important, although its value cannot be definitely ascertained.   It was obviously the right thing to do to put a strain on the libellee and keep it up to prevent her, at any rate, from moving further on.   Her service lasted about twenty-four hours, a part of it being on the night of the 6th when, with the other three vessels mentioned, she made the unsuccessful but very creditable attempt to pull off the libellee under circumstances of hardship and danger.   The work of the boat's crew of the Iwalani, in getting the four and a half inch wire hawser from libellee to the Iwalani, is entitled to consideration in estimating compensation, their hands, as testified to by Captain Piltz, being badly torn in the operation.

The work of the Likelike, already referred to, was most important, and in its several services, i. e., its pulling on the libellee from the evening of the 6th to the evening of the 7th, when the latter was floated, its work of taking cargo out of the libellee on the afternoon of the 7th, and its towing of the libellee to Honolulu after she was floated off, must be prominently considered in the estimate of compensation.

It is to be regretted that the Intrepid did not make fast to the libellee promptly upon her arrival at Kamalo on the evening of the 6th instead of waiting until midnight when the tide was falling.   This delay was due to the failure of its master and Captain Richie of the libellee to agree upon terms of compensation.   Captain Ollson offered to take hold for ten thousand dollars or upon such terms as might be reached by the owners afterwards.   Shortly before midnight Richie requested Ollson to assist,—nothing being said about compensation, and the latter set to work, and from that time till the libellee floated continued his assistance.

I am impressed by the circumstances under which the libellee floated off the reef, as favoring a conclusion that the services of the Manning materially contributed to that result.

The services of Captain Haglund, the representative of the Inter-Island, in taking charge of the salvage operations, although perhaps not fully in relation to the Manning, I consider as having contributed effectively to the success of the salvage operations.

Discipline on board the libellee was pretty nearly at an end, and the ship's company did practically nothing to save the vessel except under the direction or suggestion of Captain Haglund and Mr. Conradt.

Although the libellee cannot be said to have been in extreme peril during her stranding, she and her cargo were in great peril. The cargo was saltpeter whose value would have been substantially destroyed if the stranding had caused a leakage sufficient to have soaked it with salt water. The season of southerly gales had not ended. Such a gale of ordinary severity would have interrupted the salvage operations and probably have totally wrecked the vessel and destroyed the cargo. The distance from Honolulu, the headquarters of all salving vessels, is about sixty miles over the open ocean. The prompt and energetic measures taken by the Inter-Island were called for by the situation and must be considered in estimating awards.

I accept the witness Blair's appraisement of $40,000 as the salved value of the libellee, which appears conservative in view of the valuations of other witnesses, and to be based upon a satisfactory experience. This, with the estimate of values of the cargo and freight money, which are not contested, amounting to $110,834.16 and $7,460 respectively, makes an aggregate value of $158,294.16. The valuation of the four vessels of the Inter-Island aggregates $430,000, their crews numbered 189 persons. The valuation of the Intrepid is $30,000, and her crew numbered 12 persons.

Although the libel of the Inter-Island does not, like that of Spreckels, include its crews as proposed participants in the benefits prayed for, they are fully recognized in its brief in the words "there was a large amount of property engaged in salving and a great number of officers and crew to participate in

the award." As in the Chiusa Maru case, the awards herein made are intended to include in their benefits a reasonable proportion to the masters and crews of the vessels of libelants respectively and other servants of libelants according to the value of their services and the hardships and danger to which they were exposed. No testimony having been specifically offered on this point, I will leave the matter of adjusting such participation to the respective libelants, with the request that they file with the papers of this case their reports of their actions.

I estimate the compensation due the Inter-Island at about two-thirds of the aggregate amount which should be awarded to all of the salvors if all were claiming salvage.

Decree may be entered for the Inter-Island Steam Navigation Company, Limited, in the sum of fifteen thousand ($15,000.00) dollars, and for J. D. Spreckels & Bros. Company, in the sum of four thousand ($4,000.00) dollars, with costs.

*Modified on Appeal*: See *The Loch Garve,* 182 Fed. 519.